*575 OPINION.
Littleton :
The liability here in question is predicated upon the theory that there was a sale by the Caudill Branch Coal Co. of its assets to the Dudley Coal Co. in which the former company realized a profit, and that since the Caudill Company has been dissolved and *576 lias been divested of all of its assets, the petitioner, as a former stockholder of this corporation, should be held liable as a transferee, under the provisions of section 280 of the Revenue Act of 1926, for a part of the tax due from the corporation. The first defense made by the petitioner is that this was not a sale of assets by the Caudill Company, but rather a sale of stock by the stockholders of the Caudill Company through which the Dudley Company first acquired the stock of the Caudill Company and then came into ownership of the assets of the Caudill Company through a liquidation to it by the Caudill Company.
At the outset it should be obseiwed that what finally happened was that the assets which were owned by the Caudill Company at the beginning of these negotiations were OAvned by-the Dudley Company when the final plan was carried out, nor do we think that it can admit of doubt that this was the end in view and in contemplation of the parties from the very beginning. The controversy arises, however, because the Commissioner contends that the end was accomplished through a sale of assets by the Caudill Company to the Dudley Company, whereas the petitioner contends that it was accomplished through an acquisition of the stock of the Caudill Company by the Dudley Company and then a liquidation of the former company to the latter. On a consideration of the entire record, we are of the opinion that the petitioner’s view must be sustained. In the first place, the agreement under which the assets of the Caudill Company found their way to the Dudley Company was an agreement between the petitioner and the stockholders of the Caudill Company, and not an agreement to which the Caudill Company was in any sense a party. It is too well established to require a citation of authority that the assets of a corporation are not owned by the stockholders, but by the corporation itself, and that the stockholders (even if all had been a party to the offer to the petitioner, which is not true in this instance) can not dispose of the corporation’s assets. In United States v. Board, 14 Fed. (2d) 459, the District Court for the Western District of Kentucky had occasion to consider a contract somewhat similar in character' to the one here in question, and there made the following statement with reference to the law in Kentucky as to the sale of corporate assets:
With these principles in mind, it is difficult to reach any other conclusion than that this contract was a sale of stock by the stockholders. To construe the contract as one of sale of assets of the corporation would, in effect, be to declare it an unenforceable contract, because it is well settled that stockholders, as such, under the Kentucky law, cannot sell the assets of a corporation. It is true that, under section 883b of Kentucky Statutes (Acts Ky. 1918, c. 15), no sale of all of a corporation’s assets is valid, unless consented to by the holders of not less than three-fourths of the capital stock of the vendor corporation, which consent must be evidenced in writing, or by a vote at a special *577 meeting of the stockholders called for that purpose; but such consent does not effectuate a sale of the assets. Under the Kentucky law the affairs of the corporation must be conducted by a board of directors, and, notwithstanding the consent of the stockholders to the sale of the corporation’s assets, the contract of sale must be executed by the board of directors of the corporation. No such action on the part of the board of directors is shown in this record. Therefore the instrument should be construed as a sale of stock by the stockholders, rather than as an attempt by the stockholders to sell corporate assets, if the instrument and the evidence heard reasonably admit of such a construction.
It is true that in the offer made by the stockholders in the case at bar it was specified that the corporation required to be formed as a condition precedent to accepting the offer, should have the necessary powers to acquire the assets of the Caudill Company and that after it was formed it should acquire the assets in question, but we do not understand this to be sufficient to bind the Caudill Company to an act to which it was not a party, nor to give to the stockholders authority to do something concerning which they did not otherwise have authority.
Likewise, we fail to see wherein the resolution of the Dudley Company, purporting to ratify the agreements of petitioner and the Caudill Company with respect to the purchase of the properties of the Caudill Company, could amount to making the Caudill Company a party to the agreements when the evidence is to the effect that the agreements were between the petitioner and the stockholders .of the Caudill Company. The Dudley Company could hardly ratify more than had taken place, nor could it act for an entirely separate corporate entity, the Caudill Company. Petitioner appears to have been acting in contemplation of the formation of the Dudley Company and to have formed the Dudley Company for the purpose of having this corporation own and operate the properties of the Caudill Company, but the mere fact that the Dudley Company ratified acts of the petitioner leading to the acquisition would not, .of itself, make the Caudill Company a party to these negotiations.
Another important factor in our conclusion is that the consideration mentioned in the negotiations between petitioner and the stockholders of the Caudill Company was paid direct to the stockholders and not to the Caudill Company itself. The argument of the Commissioner that this consideration was constructively received by the Caudill Company, and then paid to the stockholders would have more force had the Caudill Company, in its corporate capacity, been a party to the negotiations, but, as we have stated above, this was not true. It can not be questioned that a stockholder may contract with an individual or a corporation for the sale of his stock and that the consideration paid for his stock becomes his absolute property without any participation on the part of the corporation. To *578 hold otherwise would be contrary to the well established principle of a corporate entity separate and apart from the stockholders. What happened here was that the petitioner contracted for the purchase of a majority of the stock of the Caudill Company and that, through appropriate corporation action, the Dudley Company completed the negotiations by paying direct to the stockholders the consideration agreed upon and received the stock. We do not conceive the situation would have been different had the Dudley Company, without the intervention of petitioner or another individual, secured the assets of the Caudill Company through an acquisition of the stock of the Caudill Company and the subsequent liquidation of the Caudill Company. In such a situation the profit would have been to the stockholders on account of their sale of stock, and also a possible profit to the Dudley Company of the difference between the price paid for the stock by it and the value of the assets received in liquidation. Regal Shoe Co., 1 B. T. A. 896. See, also, United States v. Board, supra. But the Caudill Company would not be taxable on a profit, for the reason that it received nothing on account of which gain or loss could be computed.
Much is said in the Commissioner’s argument to the effect that substance, rather than form, should be our guiding principle in the determination of the question here at issue and this, of course, is so well established as to be almost axiomatic, but we do not understand that this principle goes to the extent of requiring a finding that something occurred which, in fact, did not occur. To accomplish the purpose contemplated by the parties, at least two equally effective methods were open to them, namely, a purchase of the stock of the Caudill Company from its stockholders, followed by a liquidation of this company to the purchaser, or the purchase of the assets direct from the Caudill Company, followed by a liquidation to its stockholders. The fact that in either case the assets of the Caudill Company would find their way to the Dudley Company would not require us to say that the substance of the transaction for tax purposes was the same regardless of the method pursued. Nor do we understand that a taxpayer is subject to legal censure because he has been so fortunate as to select a method of carrying out a given transaction that produces less tax than if a different plan had been followed, provided good faith is shown, and there is no intimation of fraud or bad faith in this transaction. We must determine tax liability on the basis of what occurred and not on the possible or probable course which would have produced a greater tax.
When viewed in the light of the foregoing considerations, we are unable to escape the conclusion that the transaction in question amounted to a sale of stock by the stockholders of the Caudill Com *579 pany and not a sale of assets by the Caudill Company. It follows, therefore, that the Caudill Company is not taxable on a profit from the transaction and that the liability sought to be asserted against the petitioner on account thereof is erroneous.
In view of the foregoing conclusion it is unnecessary to consider the second issue.

Judgment will he entered for the fetition&r.