## AMERICAN TEXTILE WOOLEN CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6365.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1934.

J. R. Sherrod, of Washington, D. C. (J. Robert Sherrod, of Washington, D. C., Charles A. Noone, of Chattanooga, Tenn., Miller & Chevalier, of Washington, D. C., and Noone & Ziegler, of Chattanooga, Tenn.. on the brief), for appellant.

S. Dee Hanson, of Washington, D. C. (Sewall Key, John H. McEvers, C. M. Charest, and J. M. Leinenkugel, all of Washington, D. C., on the brief), for appellee.

Elwood Hamilton, of Louisville, Ky., amicus curiæ.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Petition by American Textile Woolen Company to review a decision of the Board of Tax Appeals in assessing on redetermination deficiencies of $53,376.62 and $39,362.-70 in income and excess-profits taxes for the years 1917 and 1918, respectively; and in establishing an overassessment of $120,317.-48 for the year 1919, which overassessment the parties are agreed was equivalent to a deficiency against the petitioner in the amount of $38,990.79.

Petitioner is a Delaware corporation with its principal office at Sweetwater, Tenn. For itself and its four affiliates—(a) Sweetwater Woolen Mills, Sweetwater, Tenn., herein called the Sweetwater Company; (b) Athens Woolen Mills, Athens, Tenn., herein called the Athens Company; (c) Park Woolen Mills, Rossville, Ga., herein called the Park Company; and (d) Louisville Woolen Mills, Louisville, Ky., herein called the Louisville Company—it filed a consolidated and amended excess-profits tax return for 1917, and a consolidated income and excess-profits tax return for 1918 and 1919. Upon the basis of these consolidated returns the Commissioner assessed the taxes against petitioner alone; and the Board confirmed the assessments (23 B. T. A. 670) with certain modifications not necessary to consider here, stating: "We are * * * of opinion that there existed among the petitioner and its subsidiaries an agreement that consolidated tax liabilities of the affiliated group for the years 1917, 1918, and 1919 should be allocated for assessment to petitioner alone."

The Board reached it conclusion upon stipulated facts and the additional testimony of F. A. Carter, president and general man-

[1] NOTE: Circuit Judge HICKENLOOPER concurred in the conclusions reached, but died before the opinion was announced.

ager, C. L. Clark, secretary and treasurer, of petitioner, and Lee H. Battle, a certified public accountant and auditor of petitioner. Acting thereupon it based its order upon the authority of Revenue Act of 1918, 40 Stat. 1057, 1081, § 240 (a), in connection with Treasury Regulations 41, art. 78, and Treasury Regulations 45 (1920 Ed.), art. 632. Such portions of the statute and of Treasury Regulations 41, art. 78, as are here involved are printed in the margin.[1]

Considering only such facts as are material to the present issue, our sole question is whether they are sufficient to sustain the order of the Board. Phillips v. Com'r, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289; Tracy v. Com'r, 53 F.(2d) 575, 579 (C. C. A. 6).

Petitioner was the dominant corporation, and the four other companies, subsidiaries, and during the years involved petitioner owned all their capital stock and acted as their selling agent. The officers of each of the five companies were F. A. Carter, president, James May, vice president, and C. L. Clark, secretary and treasurer, with the exception of the Athens Company, which had a separate secretary and treasurer, C. A. Beard. Lee H. Battle was the common auditor and accountant. These officers, common to petitioner and all the affiliates, handled all their tax matters.

Petitioner's income was derived from dividends upon the stock of the four subsidiaries and from commissions as their selling agent.

For the year 1917 each company filed separate income and excess-profits tax returns. For the year 1918 each filed separate, combined income and excess-profits tax returns. These returns seem to have been treated temporarily by the Commissioner as sufficient.

---

[1] Revenue Act of 1918, c. 18, 40 Stat. 1057, 1081:
"Sec. 240. (a) * * * In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. * * *"
Treasury Regulations 41:
"Art. 78. When affiliated corporations may be required to make consolidated return. * * * In cases where consolidated returns are accepted, the total tax will be computed in the first instance as a unit upon the basis of the consolidated return and will be assessed upon the respective affiliated corporations in such proportions as may be agreed among them. If no such agreement is made the tax will be assessed upon each such corporation in accordance with the net income and invested capital properly assignable to it."

On March 14, 1920, each company filed separate tentative returns for 1919, and on May 14, 1920, each filed separate, complete income and profits tax returns for that year.

On May 15, 1920, petitioner filed a consolidated return for 1919 on behalf of itself and the four subsidiaries and transmitted it to the appropriate collector at Nashville along with the separate complete returns of petitioner and the Athens Company, and in the transmitting letters it was stated that the parent company (the American Company) was filing a consolidated return for the group and that "the tax will be paid on the consolidated return."

In the letters of May 14, 1920, transmitting to the proper collectors the separate 1919 returns above referred to of the Sweetwater, Louisville, and Park Companies, each advised that petitioner, as the parent company of the consolidated group, was filing a consolidated return for 1920; but it is proper to state that these letters made no mention of the basis upon which the tax would be paid. Each of these letters, except that of the Louisville Company, was written upon the stationery of petitioner.

The Louisville Company paid $17,250 of the assessment against it for 1919; and thereupon filed an abatement claim for the balance, $51,098.98, upon the ground that a consolidated return had been filed for the group with the collector at Nashville. No proceeding by court action or otherwise has ever been commenced by the Commissioner for the collection of this balance.

On August 27, 1920, the Sweetwater Company on Form 1122 (see Treas. Reg. 45 [1920 Ed.] art. 632) filed an information return for the year 1919. This Form 1122 contained question 7 as follows:

"7. In case of all consolidated returns, the department prefers that the total tax assessed against the affiliated group be paid by the parent or principal reporting company, instead of being apportioned among the affiliated companies.

"If apportionment is made state the amount of income and profits tax for the taxable year to be assessed against the subsidiary or affiliated company making this return......$......"·

The Sweetwater Company left blank the space provided for the answer, indicating that nothing was to be assessed to it. This information return was signed by Carter as president and Clark as secretary and treasurer, both of the Sweetwater Company, and

petitioner. At the same time the Sweetwater Company filed an abatement claim signed by Clark upon the ground that a consolidated return for the group had been filed by the parent company whose tax payment on June 15, 1920, "includes the tax assessed against the Sweetwater Woolen Mills."

On August 28, 1920, the Athens Company filed an information return on Form 1122 for 1919 and also left blank the space provided thereon for an answer to question 7. This return was signed by Carter, president, and Beard, treasurer, of the Athens Company. At the same time it filed an abatement claim signed by Clark, who was not an officer of the Athens Company, for the taxes shown on its separate return for that year, stating that petitioner was affiliated with the Athens Company, and that the tax assessed against the latter "is being paid by the parent company."

On March 14, 1920, the Park Company paid to the collector for the district of Georgia $5,750 of the 1919 assessment against it and later filed an abatement claim for the balance, upon the ground that petitioner had filed a consolidated return and that the remaining installments of the tax were being paid by the petitioner to the collector at Nashville on the consolidated return. This abatement claim was signed by Clark, secretary and treasurer. The Park Company also filed an information return for 1919 on Form 1122 and inserted in the space provided for an answer to question 7 the figures $26,324.23.

During 1920 petitioner paid to the collector at Nashville $162,381.91. This represented the tax due upon the consolidated return for 1919. Afterwards, on December 15th, petitioner filed an abatement claim for the taxes paid for that year by the Louisville and the Park Companies, to wit, $23,000, upon the ground that these payments should apply on petitioner's consolidated return.

On October 26, 1920, the Commissioner wrote petitioner that the five companies would be required to file a consolidated excess-profits tax return for 1917 and consolidated income and excess-profits returns for 1918 and 1919. On November 2, 1920, petitioner replied that a consolidated return for 1919 had already been filed and that such returns would be filed for 1917 and 1918, and on February 12, 1921, forwarded to the Commissioner for itself and the four subsidiaries: (1) A consolidated excess-profits tax return for 1917 disclosing a tax liability of $18,128.15; (2) a consolidated income tax return for 1917 disclosing a liability of $27,908.26; and (3) a consolidated income and profits tax return for 1918 disclosing a liability of $351,034.14. Each of these returns bore the petitioner's name on its face and the accompanying schedule showed the names and addresses of the subsidiaries.

On October 28, 1921, petitioner received from the Internal Revenue Department a notice of a tentative assessment against it of $400,885.61 covering the years 1917, 1918, and 1919. Petitioner made no contention that any part of this amount should have been allocated to its subsidiaries but wrote the collector at Nashville that it felt that this tentative assessment was far in excess of any additional taxes which might be found to be due and that it desired to have a hearing before the Commissioner to show that the taxes were excessive. With this letter it mailed to the collector a check for $100,000 as a voluntary payment to be applied to any taxes which might be found due for the years stated and two days later petitioner notified the Commissioner of this payment. To make the payment petitioner borrowed $30,000 of the amount from the Louisville Company. The collector advised the Commissioner that this payment had been deposited in its "unidentified account 9-D" to "await the assessment to be made by your office"; and it was finally credited upon the taxes due for the year 1918.

On November 21, 1921, petitioner's secretary and treasurer, Clark, wrote to the Commissioner and asked for a new assessment of the income and excess-profits tax for 1917, 1918, and 1919, under section 210 of the Revenue Act of 1917 (40 Stat. 307), and sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093).

On June 13, 1924, petitioner wrote the Commissioner relative to its taxes for 1917 to 1919, inclusive, and asked a correction in respect to invested capital and stated that "we will rely entirely for any further relief on our request for consideration under the provisions of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918."

On March 13, 1924, petitioner filed with the collector at Nashville refund claims for taxes for the years 1917 and 1918 in the amount of $45,000 each, but made no mention in either claim that the deficiencies assessed upon the consolidated returns for those years had been improperly allocated.

On September 24, 1924, petitioner exe-

823

cuted and filed with the Commissioner an appeal from the preliminary determination of the consolidated tax liabilities for the years 1917 to 1919, inclusive, and again made no mention of any allocation of the deficiencies.

On October 7, 1925, the Commissioner mailed to petitioner and its subsidiaries the final deficiency letter for the years 1917, 1918, and 1919 herein complained of and in response thereto no claim was made by petitioner of improper allocation.

On September 8 and 9, 1925, the collector wrote to the Park Company asking it to execute waivers extending the period for the assessment and collection of the taxes shown to be due on the separate returns of that company for the years 1918 and 1919, respectively. Carter, president and general manager of petitioner, answered these letters on the stationery of petitioner and said:

"* * * In regard to these two claims would state, this claim for abatement was made when our income tax reports were made by the individual mills. The Income Tax Department afterwards required us to file a consolidated return which covered the returns for the Park Woolen Mill with our other mills and we understand that this did away with the individual mill returns and should have done away with these claims.

"Our whole income tax matter for the years 1918 and 19 is being handled in Washington as a consolidated return for these years. * * *"

On September 12, 1928, petitioner wrote the collector at Louisville as follows: "* * * We are at a loss to know why we cannot get this $51,000.00 cleared out at your office as no doubt you remember that we filed individual report and then the Government came along and made us file consolidated report and all the tax has been paid on the consolidated report. Therefore the Government should clear us of this 1919 tax as it has been settled."

No issue involving the improper allocation of deficiency assessments was ever raised until 1928 when petitioner became represented by new counsel. It was at his suggestion that on January 30, 1929, an amended petition was filed which raised for the first time that question.

■ We think there can be little doubt upon the facts stated that petitioner intended that the taxes for the years in question should not only be assessed against it but that they should be paid by it; and if this be true it necessarily follows that the subsidiaries were in accord because all five corporations had the same officers and agents in charge of its tax matters with the one exception above noted. It is inconsistent to say that the officers and agents acting for the parent company have agreed for it that a thing should be done and at the same time say that these same officers and agents acting for the subsidiaries have intended otherwise. We think there is substantial evidence, in the course followed by these officers in representing all the companies throughout the whole controversy, to show an agreement among them all that the entire tax against the group should be assessed and paid by the parent company. See In re Temtor Corn & Fruit Products Co. (D. C.) 299 F. 326, 329. It is difficult to think otherwise. We think, without a reiteration of the facts, that the Commissioner was justified in making the assessment from this inference.

■ Essex Coal Co. v. Com'r, 39 F.(2d) 892, 894 (C. C. A. 6), is urged upon us in support of the contrary view. In that case it is true the officers of the two corporations involved were the same individuals. See Essex Coal Co. v. Com'r, 12 B. T. A. 994, 998. But this court in its opinion gave no consideration to that feature. In this case the identity of officials is a fact which should be considered along with all the other facts and circumstances. We recognize that the court in that case did say: "The statute clearly contemplates the existence of an agreement, or the absence of one, at the time of the filing of the return and the making of the assessment." But the statute does not contemplate nor require that such an agreement should be made with the Commissioner, nor that it be in writing nor that it be filed. It requires only that the agreement be among the affiliates. We see no reason why it may not, like many other agreements, be implied from circumstances. It is a forced interpretation to say that the statute requires the common officers of all the companies to enter into a formal and express contract with themselves as to the allocation of the taxes.

Petitioner itself never raised the point, that there was any lack of understanding that the taxes involved should be assessed against it, until new counsel made the suggestion in 1928. Upon the other hand, on June 13, 1924, it wrote the Commissioner that it would rely entirely for further relief upon another and different statute. When it filed the consolidated return for 1919 it wrote the collector that "the tax will be paid on the consolidated return," and when it filed

the consolidated return for 1917 and 1918 it voluntarily paid $100,000 of the tax even before it was finally assessed. The history of the case, with little to the contrary, indicates that the affiliates themselves acted upon the assumption that after the consolidated returns were filed the tax would be assessed against and paid by petitioner.

The abatement claims filed by the four subsidiaries can be explained upon no other hypothesis than that after the consolidated returns were filed they each understood and expected that the taxes would be assessed against the parent company.

Petitioner urges that the Board did not make a finding of fact that the agreement required by the statute existed. But, as stated at the outset, the Board did so find in its opinion and that is all that is required. Sheppard & Myers v. Com'r, 45 F.(2d) 50, 51 (C. C. A. 3).

The order of the Board of Tax Appeals is affirmed.[2]

---

[2] At the conference the late Circuit Judge HICKENLOOPER dissented from the conclusions herein reached.