## BAKER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8315.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1940.

A. O. Dickey, of Cleveland, Ohio (Joseph G. Fogg, of Cleveland, Ohio, on the brief), for petitioner.

M. S. Zimmerman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Petition of Baker for review of a decision of the Board of Tax Appeals in assessing against him a deficiency in income tax for 1928 in the amount of $7,815.66.

The assessment grew out of the following transactions: Early in 1928 petitioner was the owner of 568½ shares of no-par common stock of Arthur G. McKee & Company, a Delaware corporation. Its assets on March 31, 1928, were $651,880.43 and

its total outstanding no-par common stock, 1,943⅓ shares.

Pursuant to a plan of reorganization, the Company's charter was amended in 1928 to provide for a reclassification of its stock to permit the issuance of 32,500 shares of Class A stock of no-par value and 55,000 shares of Class B stock of no-par value.

Both classes of stock were entitled to "full voting power" and Class A stock was entitled to cumulative annual dividends of $3 a share and was redeemable at $50 a share and accrued dividends.

The articles of incorporation as amended in connection with the reorganization restricted the sale of B stock to officers and employees and required that any sale or other disposition of the stock in case of death of the owner or his ceasing active connection with the company be made pro rata to B owners. The sale price of the B shares was fixed by a formula which deducted a sum from the annual net earnings equal to the dividend of the A shares, multiplied it by 8, and divided it by the number of outstanding B shares, the resulting quotient being the purchase price per share of B stock.

In April, 1928, these charter provisions were modified by an agreement between all holders of B stock, whereby they agreed to deposit all their shares endorsed in blank with three trustees, holding in the aggregate more than 51% of Class B shares and to transfer to the trustees their preemptive rights to purchase B stock from other holders thereof.

Clause 2 of the agreement provided that shares purchased by the trustees might "at the discretion of the Trustees be sold to such officers or employees of Arthur G. McKee & Company making application therefor as the Trustees in their absolute discretion shall determine. * * * Such shares shall be sold by the Trustees at the then existing purchase price of said shares as defined in Section 6 of Article Fourth of the Charter aforesaid."

The third clause gave any officer or employee, whether or not a stockholder, the right to apply for B shares, and if they were not available, empowered the trustees in their discretion to purchase for resale to such applicant all or any part of the shares applied for from remaining stockholders pro rata at the then existing purchase price defined in Section 6, Article 4, aforesaid.

In furtherance of the reorganization petitioner in April, 1928, exchanged his 568½ shares of old common stock for 9,508 shares of Class A and 16,090 shares of Class B. Under Section 112(b)(3) of Chapter 852, Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Code, § 112(b)(3), no gain or loss was recognized upon this transaction.

But in 1928 petitioner sold 5,850 of his A shares to brokers for $34 per share, realizing $198,900.[1] The Commissioner determined that this total sale price of the A stock constituted taxable income to petitioner, on the ground that no gain had been reported upon the receipt of 550 shares of the old common stock received by petitioner in a reorganization in 1920, some of which shares were represented in the 568½ shares exchanged for the A and B stock, his theory being that the 568½ shares had a zero basis.

The Board rejected this determination and established a basis of $115,693.29 for the 550 shares of common received from the company in the 1920 reorganization. Taking into account all purchases and sales of the old common stock by petitioner between April, 1920, and April 1, 1928, and using the "first in, first out" rule, the Board reached a basis for the 568½ shares exchanged for A and B stock in April, 1928, which is not now in dispute by either party.

But the Board determined that only 61.35% of the basis should be apportioned to the A shares and that the remainder or 38.65% should be assigned to the B shares, it having determined that the A stock had a value of $34 per share and the B stock a sale price of $12.66 per share at the time they were acquired. The figure of $12.66 for the B shares was arrived at by application of the formula, heretofore mentioned, to the sales of B stock made during the taxable period. In thus allocating 38.65% of the cost basis of the 568½ shares of old common to the B shares, the Board computed a taxable gain of $148,731.09 to petitioner and assessed the deficiency accordingly.

Petitioner contends that the entire cost basis of the 568½ shares should be deducted from the $198,900 received from the sale of A shares before there is taxable in-

---

[1] It may be noted that the brokers disposed of all A shares acquired by them at $40 per share.

come; that the B shares were sold under the trust agreement in a restricted market and had no real market value in the sense of Sec. 113(a)(6) of the Revenue Act of 1928, Ch. 852, 26 U.S.C.A. Int.Rev.Acts, page 381, or of Article 1567 of Treasury Regulation 62, promulgated under the Revenue Act of 1921 and relied upon by respondent; and that it was therefore error to assign to the B shares 38.65% of the cost basis. The material portions of Article 1567 are printed in the margin.[2]

■ There was some objection to the application of Sec. 113(a)(6) since it referred to "property" acquired in an exchange and not to stocks. There was also an objection to the application of Article 1567 upon the ground that it had not been carried into subsequent promulgations. But neither of these objections was seriously pressed, and could not consistently be, because petitioner himself relies upon that provision of the Article which we have italicized. The regulation has been applied and sustained in Salvage v. Com'r, 2 Cir., 76 F.2d 112; Houghton v. Com'r, 2 Cir., 71 F.2d 656, and Curtiss v. Com'r, 5 Cir., 57 F.2d 847, 850.

■ The chief issue is, whether the Board made a finding of market value of the B shares, and if so, whether there is evidence to support it. The findings of fact and opinion of the Board were filed in consolidated proceedings involving deficiencies assessed, not only against petitioner Baker, but against Rutledge and McKee as well. The Board found in the Rutledge case that, "Upon the recapitalization of the Delaware Company in April 1928, Rutledge received, in exchange for his 59 shares of stock, 987 shares of Class A stock and 1670 shares of Class B stock. In the same year he sold 607 shares of Class A stock at $34.00 per share, or $20,638 and 470 shares of Class B stock at $12.66 per share or $5,950.20. In his income tax return for 1928 he reported a gain

from the sale of such stock in the amount of $17,083.44, the difference between the aggregate sale price of $26,588.20 received for both the Class A and B stock sold and the entire cost of the 59 shares. The respondent determined a gain of $21,968.04 by allocating the cost of the 59 shares to each class of new stock in the proportion which the value (sale price) of each class issued bears to the value (aggregate sale price) of the total shares issued of both classes of stock."

In the closing paragraph of its opinion the Board said:

"In H. A. Green, supra, it was held that the following provision of Article 1567 of Regulations 62 under the Revenue Act of 1921:

" '* * * the proportion of the original cost or other basis, to be allocated to each class of new securities is that proportion which the market value of the particular class bears to the market value of all securities received on the date of the exchange'

lays down a principle equally applicable in determining gain or loss under subsequent acts. This principle of allocation was applied by the respondent in determining the gain realized by Rutledge and, in our opinion, it should have been applied. It is equally applicable in apportioning the basis of the common stock held by McKee and Baker in April 1928, between the Class A and B stock owned by them."

We think that this finding and statement of the Board recognizes and adopts a market value of $12.66 for B shares. See Gamble v. Com'r, 6 Cir., 101 F.2d 565, 568.

■ It is not material that the entire finding was not embraced in the technical findings of fact. American Textile Woolen Co. v. Com'r, 6 Cir., 68 F.2d 820, 824. Furthermore, we think that petitioner failed to carry the burden of proving that the Board's assessment was wrong. See

---

[2] "Art. 1567. Gain or loss from subsequent sale.—(a) Where property is exchanged for other property and no gain or loss is recognized * * * the property received shall for the purpose of determining gain or loss from its subsequent sale be treated as taking the place of the property exchanged therefor. * * * If property is exchanged for two kinds of property and * * * *if no fair apportionment is practicable, no profit on any subsequent sale of any part of the property received in exchange is realized until out of the proceeds of sale shall have been* recovered the entire cost of the original property. When securities of a single class are exchanged for new securities of different classes so that no gain or loss is realized * * * for the purpose of determining gain or loss on the subsequent sale of any of the new securities the proportion of the original cost, or other basis, to be allocated to each class of new securities is that proportion which the market value of the particular class bears to the market value of all securities received on the date of the exchange. * * *" (Italics ours.)

Crowell v. Com'r, 6 Cir., 62 F.2d 51, 53; Tracy v. Com'r, 6 Cir., 53 F.2d 575, 579; Insurance & Title Guarantee Co. v. Com'r, 2 Cir., 36 F.2d 842, 845.

We said in the Crowell case that "readily realizable market value may well be considered the best, if not a conclusive, measure of value. If such standard of value exists, it is, under the regulation, to be applied. It is not, however, an exclusive standard, the nonexistence of which compels a determination of no value." [62 F.2d 52.]

■ We think there was substantial testimony to support the Board's conclusion. It found that in 1928 McKee sold 4,981 shares and Rutledge 470 shares of Class B stock at $12.66 a share. This indicates of course that the trust agreement of April, 1928, did not force the B shares out of the market. The B shares, as found by the Board, had a market, though limited somewhat to officers and employees.

The decision of the Board of Tax Appeals is affirmed.