BEMIS BRO. BAG CO. *v.* UNITED STATES

No. 515.   Argued February 13, 14, 1933.—Decided March 13, 1933

*Mr. Abraham Lowenhaupt,* with whom *Messrs. Stanley S. Waite* and *R. S. Doyle* were on the brief, for petitioner.

*Mr. Erwin N. Griswold,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. Sewall Key* and *J. P. Jackson* were on the brief, for the United States.

By leave of Court, *Messrs. Kingman Brewster, James S. Y. Ivins, Percy W. Phillips, O. R. Folsom-Jones,* and *Richard B. Barker* filed a brief as *amici curiae.*

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The controversy to be determined presents another phase of a problem which has been much considered by the court in opinions recently announced. *United States* v. *Memphis Cotton Oil Co.,* 288 U.S. 62; *United States* v. *Prentiss & Co.,* 288 U.S. 73; *United States* v. *Factors & Finance Co.,* 288 U.S. 89. There is need once again to decide whether a claim for the refund of a tax has been presented by the taxpayer in such a form as to be subject to amendment after a claim wholly new would be barred by limitation.

The petitioner, Bemis Bro. Bag Company, having made payment of excess profits taxes for 1918 and 1919, filed its claims for refund with the Commissioner of Internal Revenue. The claims contained a request for a special assessment under §§ 327 and 328 of the Revenue Act of 1918, and in support of the request annexed a statement under oath which had been filed with a like claim as to the taxes of another year.

By the statement thus annexed, the right to the relief demanded is placed upon three grounds which are not to be confused.

The first is that the case is one " where the Commissioner is unable to determine the invested capital " in the ordinary way. This is the ground covered by § 327 (a) of the applicable statute.

The second is that the case is one " where a mixed aggregate of tangible and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective

values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively." This is the ground covered by § 327 (c).

The third is that the case is one where " the tax, if determined without the benefit of this section [327] would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without the benefit of this section and the tax computed by reference to the representative corporations specified in section 328." This is the ground covered by § 327 (d).

The taxpayer in presenting its claims to the Commissioner submitted facts and arguments in support of each of the three grounds.

To show that the invested capital had been inaccurately determined, and could not be accurately determined by resort to the usual methods, the taxpayer stated *inter alia* that the value of printing plates and patterns had been erroneously omitted, and that owing to the loss of vouchers and the changes wrought by the lapse of time, the value of these items could not be measured with complete precision, though it was susceptible even then of being fixed approximately. An estimate of the value was included in the claims.

To show that the case was one of a mixed aggregate of tangibles and intangibles paid for in stock, with the value of the several elements not subject to accurate division, the taxpayer made a statement of the corporate history and structure.

To show that there were abnormal conditions that would bring about injustice if the computation of the tax were to be made according to the usual method, and this though the invested capital were to be accurately determined, the taxpayer made a statement of the inequalities

between its position and that of other corporations engaged in a like business.

Grounds numbers one and two gave notice to the Commissioner that the taxpayer's invested capital had been erroneously assessed and charged him with a duty to inquire into the error and to give appropriate relief. *United States* v. *Factors & Finance Co., supra.* If he found that items had been omitted, but that he was unable to ascertain their value with reasonable accuracy, he might resort to § 328, and order the tax to be assessed in accordance with a special method. If he found that there had been omissions, but that he was able to his own satisfaction to identify and appraise them, he would learn in the process that there had been an undervaluation of invested capital, and that the assessment of the tax was correspondingly erroneous.

Ground number three is independent of the others, and has a different origin and meaning. "A demand for a special assessment in accordance with § 327 (d) of the statute of 1918 is not a challenge to any act of the Commissioner in the valuation of invested capital. On the contrary, the valuation of invested capital is irrelevant if the special method is accepted. The very basis of the application for the use of such a method is the presence of abnormal conditions whereby an unfair and disproportionate burden will be laid upon the taxpayer if invested capital is to be reckoned according to the statutory definition (§§ 325, 326), and the profits of the taxpayer subjected to a tax accordingly. Let the new method be adopted and the value of the invested capital ceases to be a factor in the process." *United States* v. *Prentiss & Co., supra.*

The Commissioner notified the taxpayer in October and November, 1926, that there was no evidence before him sufficient to justify relief under § 327 (d) on the ground of abnormal conditions in the business of the

claimant as compared with that of others. He seems to have overlooked the fact that the taxpayer was claiming relief also under subdivisions (a) and (c). A protest promptly followed the delivery of the notice, and with the protest went an amended claim. In this amended claim there was no change of importance, unless importance be attached to the form of the relief demanded. The request for a computation in accordance with § 328 was accompanied by a request for relief in the alternative. In the event of a denial of a special assessment; the taxpayer now demanded that the items "improperly eliminated from invested capital should be restored to invested capital, and the excess profits tax recalculated on that basis." The Commissioner ordered another hearing, and considered the claim anew. Upon reconsideration he held that there had been an undervaluation of invested capital in 1918 and 1919 with the result that the taxes for the one year had been overpaid in the sum of $14,054.18, and for the other in the sum of $9,073.15. After thus finding an error in the assessment, he dismissed the claims for refund on the ground that their form as first presented was defective and that the amendment came too late. Cf. *United States* v. *Memphis Cotton Oil Co., supra.* In a suit by the taxpayer to recover the moneys overpaid, the District Court gave judgment for the Government, and the Court of Appeals affirmed. 60 F. (2d) 944. The case is here on certiorari.

We held in *United States* v. *Prentiss & Co., supra,* that after the period of limitation a claim for a special assessment under § 327 (d) may not be turned by amendment into one for the reaudit of invested capital and for the reassessment of the tax accordingly. The two proceedings, it was pointed out, are essentially diverse. The one is non-justiciable, invoking, as it does, an administrative and discretionary jurisdiction. The other is akin to a

judicial inquiry, reëxamining an earlier determination for error of fact or law. The one " assumes adherence to the statute in the valuation of invested capital, and counts upon extraordinary conditions as justifying a claim that the statute is oppressive." The other, rejecting that assumption, is a demand for a new audit. The distinction between a special assessment under subdivision $d$ and a claim for like relief under subdivisions $a$ and $c$ becomes apparent when the *Prentiss* case is compared with another case decided the same day. In *United States* v. *Factors & Finance Co., supra,* there had been a general claim for refund without statement of the grounds. The taxpayer tried to turn it by amendment into a claim for a special assessment under § 210 of the Revenue Act of 1917. The amendment was upheld. We pointed out, in upholding it, that " § 210 of the Act of 1917 is the precursor of § 327 (a) of the Act of 1918, and is not at all the analogue of § 327 (d)." Under § 210 of the earlier act, as under § 327 (a) of the later act, there is a challenge to the valuation of invested capital which opens up the whole subject for revision and readjustment.

We think procedural analogies and administrative practice sustain the contention of the petitioner that the claim as amended does not differ in matter of substance from the claim as first presented.

1. If we look to the analogy of pleadings in a lawsuit, the conclusion is not doubtful. The claim as first presented gives notice to the Commissioner that assets of great value have been omitted from invested capital. It tells him what those assets are, and even estimates their value, though imperfectly and roughly. There is no failure to make disclosures of the substance of the grievance, no dearth of information as to the facts that should be the prelude to inquiry. What is subject to criticism is this and nothing more, that the claim is niggardly, and hence

defective, in its prayer for relief. It asks for a special assessment under §§ 327 and 328. It should have asked for this, and in the alternative that invested capital be reëxamined and increased.. But for the purpose of determining the limits of permissible amendment, a change of the legal theory of a suit, " a departure from law to law," is no longer accepted as a test of general validity. *United States* v. *Memphis Cotton Oil Co., supra,* and cases there cited. Still weaker is a test derived from the prayer for relief, the mere demand for judgment. The rule is now general that at a trial upon the merits the suitor shall have the relief appropriate to the facts that he has pleaded, whether he has prayed for it or not.* Cf. Equity Rules 19 and 22. A claim. for refund is not a pleading, and analogies borrowed from the forms and methods of a lawsuit will be applied to these administrative remedies " in due subordination to differences of end and aim." *United States* v. *Memphis Cotton Oil Co., supra.* Even so, they will have their place of influence, which may turn out to be controlling, if differences of end and aim are obscure or indecisive.

2. In this case administrative practice reinforces the suggestions of procedural analogies, and bids us follow where they point.

When a claim such as the one in controversy is submitted to a Commissioner, there is only one way in which it is possible for him to deal with it. He must look into the omitted items, and determine their effect upon the assessment he has made. If he finds that items have been omitted, and that by reason of their nature they make it impossible for him to determine the value of the capital, he will order a special assessment, for there will be nothing else to do. If he finds that they have been omitted, but

---

* For a summary of the decisions see Clark on Code Pleading, p. 184.

that he is able to appraise them, he will have learned in the course of the investigation that the assessment is erroneous in a determinable amount. Justice will then require that it be changed to that extent. In amending the claim by a prayer for alternative relief, a taxpayer is not forcing the inquiry into an unexplored territory, into strange and foreign paths. He is asking the Commissioner to take action upon discoveries already in the making or perhaps already made. There is no transfiguring amendment, such as we found in the *Prentiss* case, with its attempted change from a discretionary to a justiciable remedy. There is an adaptation of the relief to a case already proved.

The brief for the Government describes the division of functions between one section and another of the Bureau of Internal Revenue. A claim which appears on its face to be one for a special assessment is sent to the Special Assessment section. A claim for the revaluation of invested capital is sent to a section of the Field Audit Review Division. From this it ensues, we are told, that claims may be handled by different persons, and to some extent in different ways, according to the end in view. More than that must be shown to make out the contention that the substantial identity of the claim will be changed by this amendment. Whatever the distribution of labor may be between one division and another, it is impossible for any of them to pass upon a claim under § 327 (a) without also passing upon the question whether the valuation of the invested capital is wrong, and, if so, whether in a determinable or an indeterminable amount. Once let it be ascertained that the amount is determinable, and all that follows is an incident. At that point discovery has gone on to such a stage that the Commissioner may not rid himself of the duty of pressing forward to the end. He cannot in good conscience be satisfied with less. There may be need to take the case out

of one section and transfer it to another before revision will be complete. All this is quite irrelevant when once a wrong is brought to light. There can be no stopping after that until justice has been done.

The judgment is                                    *Reversed.*