## FREEPORT TEXAS CO. v. BOWERS.
### No. 269.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

Paul Armitage, of New York City (George B. Furman, of Washington, D. C., and Edward Holloway, of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, which is the parent of various affiliated corporations, sued: (1) to recover a deficiency assessment of income taxes amounting to $1,260,466.18 because it was laid entirely against the parent company, which had no income, instead of being apportioned on the basis of net income assignable to each of the affiliates; (2) to recover $347,436.36 because, even if the income taxes of the affiliates were properly laid against the parent company, the Bryan Mound properties belonging to the Freeport Sulphur Company, a member of the consolidated group, were given an insufficient value in determining the invested capital of the taxpayer.

We can see no merit in the plaintiff's first contention that it is entitled to recov-

er the entire deficiency of $1,260,466.18 on the ground that it was assessed against the parent without any agreement among the affiliates to that effect.

The plaintiff filed a tentative consolidated return on March 15, 1919, on behalf of itself and the affiliates that were its subsidiaries, and on June 14, 1919, made a final consolidated return for itself and them. Taxes were paid in connection with each of these returns by checks of Freeport Sulphur Company, the affiliate which had the largest net income, drawn to the order of ·S. M. Swenson & Sons and by them indorsed to the order of the Collector of Internal Revenue. The subsidiary corporations filed information returns stating the portions of the tax apportioned to those of them earning income. In February, 1920, the subsidiaries filed amended information returns. The subsidiary Freeport Sulphur Company, to which a tax of $683,322.32 was apportioned in its original information return, filed an amended return in which it stated that no taxes were to be assessed against it. The subsidiary Freeport Sulphur Transportation Company, to which a tax of $5,557.31 was apportioned in its original information return, filed an amended return wherein it stated that no taxes were to be assessed against it. The subsidiary Freeport Light, Water & Ice Company, to which a tax of $2,334.96 was apportioned in its original information return, filed an amended return wherein it stated that no taxes were to be assessed against it. The subsidiary Freeport Gas Company sustained a net loss during the taxable year, as also did the subsidiary Freeport Townsite Company, and each filed an information return. The former stated that no taxes were apportioned to it. Doubtless through an inadvertence, the latter company did not answer the question as to the amount of taxes apportioned to it. As it had sustained a net loss, no apportionment would have been likely. The subsidiary Freeport Terminal Company, to which a tax of $5,457.31 was apportioned in its original information return, seems to have filed no amended return. S. M. Swenson, who had signed the amended returns of Freeport Sulphur Company and Freeport Sulphur Transportation Company as treasurer, signed the return of Freeport Terminal Company as president. The Freeport Terminal Company therefore knew, through its president, that amended returns of the Freeport Sulphur Company and the Freeport Sulphur Transportation

Company had been filed for about 99 per cent. of the income of the group of affiliates. These amended returns stated that no taxes were to be assessed against those subsidiaries. It is unreasonable to suppose that Freeport Terminal Company, which was an inconspicuous affiliate, was to stand in a different position from that of the other subsidiaries.

It is argued by the plaintiff that there was no right to assess the whole tax against it for the reason that the original returns showed that the taxes were apportioned among the affiliates. But the amended returns which we have set forth were filed prior to the deficiency assessment and show an arrangement that the subsidiaries were not to pay the tax. Moreover, the checks of the Freeport Sulphur Company paid the taxes upon both the tentative and final consolidated returns made by the plaintiff and the latter's own check paid the deficiency tax of $1,276,728.43. Moreover, on February 8, 1926, the plaintiff wrote a letter to the Commissioner "concerning a deficiency in the taxes of the Freeport Texas Company for the calendar year 1918, amounting to $1,276,728.43," in which it recognized any tax liability based upon the consolidated return as its own and requested that "the assessment be made immediately." On February 28, 1927, the plaintiff wrote a letter to the Secretary of the Treasury asking for a refund, in which it was described as the person who had paid the deficiency tax. In 1930 its president filed a claim for refund on behalf of plaintiff and its subsidiaries. That indicated that the payment was on behalf of all the affiliates. Likewise the appeal to the Commissioner on February 19, 1924, described the plaintiff as the taxpayer. All the written evidence subsequent to the original information returns treated the plaintiff as the taxpayer, and the Commissioner was given every reason to deal with it as the conceded representative and obligor of the group.

The fact that the money for all the taxes paid, including that for the deficiency assessment, was derived directly or indirectly from the Freeport Sulphur Company, did not alter the incidence of the tax obligation. In spite of some testimony to the contrary, we think there can be no reasonable doubt that, by agreement, the tax was to be assessed to the plaintiff.

▇ Section 240 (a) of the Revenue Act of 1918 (40 Stat. 1081) provides that where a tax is assessed upon the basis of a con-

solidated return it shall be "assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them." Under that section there was no requirement that the agreement should be in writing, nor did the Regulations then require that it should be in writing, as did the Regulations under the Revenue Act of 1928. There was likewise nothing to require the agreement to accompany the return. So long as it preceded the assessment so that it would be before the Commissioner when he made the assessment, it would satisfy the statute. American Textile Woolen Co. v. Commissioner, 68 F.(2d) 820 (C. C. A. 6); Washburn Wire Co. v. Commissioner, 67 F.(2d) 658 (C. C. A. 1); Popular Price Tailoring Co. v. United States, 33 F.(2d) 464 (C. C. A. 7).

The plaintiff contends that the taxes on the 1918 income should have been apportioned according to the net income of each affiliate because that mode of assessing taxes had been used for the 1917 income. It is true that where a consolidated return is made for one year the group cannot change its mode of reporting income and go back to individual returns the next year unless it first obtains the consent of the Commissioner; but, where a consolidated return is permissible, there is no rule that prevents affiliates from agreeing among themselves as to how the tax for any year shall be assessed against the respective affiliated corporations. In the present case the time to assess taxes against the subsidiary corporations has expired and the Commissioner can look to the parent company alone. The plaintiff takes the position that it is entitled to recover $1,260,-466.18, even though at the time of payment taxes to that amount were due from the group as a whole, on the ground that this sum was erroneously assessed against itself instead of being apportioned among the affiliates. We cannot interpret the intent of the affiliates in a way so out of accord with the dealings between themselves and the Tax Bureau, especially when the effect of plaintiff's contention would be to relieve the entire group of the additional tax irrespective of its merits. Prior to February 13, 1926, when the Commissioner made the deficiency assessment, there was nothing to prevent the affiliates from changing their intention to have the taxes apportioned, which apparently existed when they filed their original returns. By their amended returns and by their subsequent conduct, they evidenced an agreement to have the whole tax assessed against the plaintiff, whereupon the latter, without suggesting that it was not the taxpayer, paid the additional tax which it now seeks to recover. Under such circumstances, it cannot substantiate the claim that it was not in law the taxpayer and the District Court properly denied recovery on that ground.

The cause of action to recover $347,-436.36 on the ground that the plaintiff's Bryan Mound properties were undervalued in determining its invested capital must fail because it was supported by no sufficient refunding claim.

The amended complaint alleges that the claim for a refund was rejected "on or about June 3, 1930." It is entirely settled that such a claim must precede the bringing of a suit to recover taxes unlawfully assessed. We, therefore, have to determine what items were the subject of the claim thus rejected. After the plaintiff had filed its final return on June 14, 1919, the Tax Bureau audited it, and on January 23, 1924, the Commissioner sent a deficiency letter to the plaintiff. In that letter the value of sulphur reserves, which was the chief basis for the deficiency, was fixed at $7,722,217.-50. The result of the audit was a proposed assessment of an additional tax of $2,124,-341.89.

The plaintiff objected to the proposed assessment in a communication of February 19, 1924, and claimed a valuation for the sulphur deposits of $17,220,000 as of March 1, 1913, based on a report of Fisher & Lowrie, consulting geologists and fuel engineers. On June 23, 1925, the Commissioner reduced the proposed additional assessment of $2,124,341.89 to $1,276,728.43, principally by raising the valuation of sulphur deposits from $7,722,217.50 to $13,-375,857. To this assessment the plaintiff again objected by letter of July 16, 1925 (Defendant's Exhibit 23), but made no objection or reference to the value of the sulphur reserves. It objected to the adjustment of the invested capital only because of the deduction of income and previous taxes for 1917 which were said to have been incorrectly computed. On February 8, 1926, the plaintiff wrote the Commissioner concerning the deficiency in taxes tentatively assessed at $1,276,728.43 by the Commissioner on June 23, 1925, and stated that the corporation would not be in a position to perfect its protest against any of the adjustments made in the net income or invested capital within a reasonable time

and, therefore, requested that the assessment be made immediately, adding that: "If a protest is later decided upon, it will be based upon new data and information, which will be attached to a claim for refund, accompanying a request for the reopening of the case." (Plaintiff's Exhibit A-1.) Thereupon, the Commissioner assessed the deficiency at $1,276,728.43, which the plaintiff paid by its check on February 19, 1926.

On April 19, 1929, the plaintiff made a written claim for a refund (Plaintiff's Exhibit K) on the Commissioner's form, in which it stated: "Amount to be refunded (or such greater amount as is legally refundable)—$93,990.21." It concluded by saying: "This refund is claimed on account of an insufficient deduction for depreciation and an insufficient amount of Invested Capital for the year ending Nov. 30, 1918. Supporting data and evidence is to be filed with the Commissioner of Internal Revenue, Washington, D. C."

On April 25, 1929, supporting data were filed and it was specified that:

"The basis of this claim for refund is:

"(a) Depreciation deductions for the year ending Nov. 30, 1918 of the plant and equipment of the Freeport Sulphur Co.

"(b) Reduction of Consolidated Invested Capital for the year ending Nov. 30, 1918, on account of income and profits taxes for the year ending Nov. 30, 1917."

The supporting data to the foregoing claim contained objections to the item of invested capital, as adjusted, on the ground that it was based upon incorrect and too large deductions for 1917 taxes. They were the same objections that had been raised in the letter of July 16, 1925, and like those in that letter contained no reference to the value of the sulphur reserves which the Commissioner had fixed at $13,375,857 on June 23, 1925.

The presentation of the claim on April 19, 1929, and of the supporting data on April 25, 1929, was followed by a conference on August 15, 1929, with Cardwell, the chief of the Income Tax Unit of the Bureau of Internal Revenue, and Williamson, the senior auditor of the Bureau. The issue which the taxpayer raised as to the revision of the deduction for 1917 taxes was decided in favor of the Freeport Texas Company. "Issue 4," termed "Decrease in invested capital due to erroneous allowance of paid-in surplus," related to an item of $465,259.34 representing the cost of the stock of the Freeport Sulphur Company which had been purchased in 1913 by the Freeport Texas Company. That amount was deducted from the amount formerly assessed in order to prevent a duplication. The value of the sulphur deposits was not discussed at the conference or involved in the issues before the representatives of the Bureau.

On December 13, 1929, the plaintiff filed a claim for a refund of the entire additional tax of $1,276,728.43, which it had paid by its check on February 19, 1926, on the ground that the tax had not been properly assessed to it (Plaintiff's Exhibit H). On June 3, 1930, the Commissioner tentatively rejected the claim for the total refund of $1,276,728.43 filed December 13, 1929, as well as the claim for the refund of $93,-990.21 filed April 19, 1929, and suggested certain adjustments which would allow the taxpayer a rebate of $16,260.25 upon the additional tax of $1,276,728.43 it had paid February 19, 1926. Neither claim mentioned the sulphur deposits and no objection had been made to their valuation by the Commissioner since plaintiff's protest on February 19, 1924 (Defendant's Exhibit 21). Because of that protest the Commissioner had raised the valuation of the sulphur reserves from $7,722,217.50 to $13,375,857, though refusing to advance it to $17,220,-000, as requested by the taxpayer. From the time of that adjustment the plaintiff had not questioned the valuation of $13,375,857. The Commissioner revised the additional tax of $1,276,728.43 by reducing the tax liability to the extent of $16,260.25, and on July 7, 1930, both claims were formally rejected except for the partial allowance of $16,260.25 which was refunded to the taxpayer by the Treasury.

The refund was principally due to an increase of invested capital arrived at by a smaller deduction for 1917 taxes and for depreciation of mineral deposits than had been originally made and which more than offset the item of $465,259.34.

On October 2, 1930, the present action was begun, and as the claims for refunding overassessed 1918 taxes then stood, there was no claim which questioned the valuation of the sulphur reserves at $13,-375,857 or apprized the Commissioner of any purpose on the part of the plaintiff to revive its old contention that the sulphur reserves should be valued at $17,220,-000. Such a contention in respect to the

1918 taxes had clearly been abandoned and the taxpayer had no refunding claim left except that the additional assessment had not been properly made against the parent company, but should have been spread among the affiliates in proportion to net income. Indeed in its letter to the Bureau on October 22, 1929, the taxpayer protested that "the full value of sulphur property of $13,375,857.00 was also allowed as an increase to Invested Capital * * *" and should not be reduced. We can discover no claim on which the cause of action to recover $347,436.36 could be founded and the presentation of such a claim was a prerequisite to suit. United States v. Felt & Tarrant Manufacturing Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025.

In Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253; United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619; United States v. Henry Prentiss & Co., 288 U. S. 73, 53 S. Ct. 283, 77 L. Ed. 626; United States v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633; and Bemis Bros. Bag Co. v. United States, 289 U. S. 28, 53 S. Ct. 454, 77 L. Ed. 1011, the court was dealing with the right to amend claims after the period to present them had expired and before rejection. It is quite a different matter to attempt to amend claims after they have been rejected and the proceedings before the Commissioner have been closed, as was the situation here. Amendment after rejection is not permissible. United States v. Memphis Cotton Oil Co., 288 U. S. 62, 72, 53 S. Ct. 278, 77 L. Ed. 619; United States v. Henry Prentiss & Co., 288 U. S. 73, 83, 53 S. Ct. 283, 77 L. Ed. 626.

But the taxpayer largely relies on a waiver by the Commissioner based on the agreement of May 28, 1931, between itself and the latter. In 1931 there were pending before the Commissioner proceedings for the revision of the deductions for depletion of the sulphur reserves of the Freeport Texas Company for the years 1926, 1927, and 1928. In order to adjust the amount of depletion for these years it was necessary to value the sulphur deposits on March 1, 1913. On June 12, 1931, the government engineers reported a value of the deposits as of March 1, 1913, amounting to $17,808,110, which would increase the old valuation of $13,375,857 allowed by the Commissioner by $4,432,253 and entitle the plaintiff to a recovery of $347,436.36, if ap-

plied to the 1918 taxes. The report dealt with a valuation for depletion purposes and had nothing to do with the computation of invested capital which would not figure in the plaintiff's taxes after 1921. If the new valuation had been used for earlier years, it would have involved a readjustment of the tax liability of the group for the years prior to 1922. The larger valuation was only intended to apply to depletion and might have been contested by the Commissioner if used for other purposes. The only protest in respect to this matter was made on April 19, 1930 (Plaintiff's Exhibit T), and it in terms related to the year 1928 and stated that the depletion theretofore allowed had absorbed the sulphur deposits though the taxpayer still had substantial remaining reserves.

The plaintiff regards the following clause of the agreement of May 28, 1931, as applying the new valuation of the sulphur reserves to the 1918 taxes: "Whereas, the Commissioner of Internal Revenue being desirous of finally concluding this controversy, is unwilling to give his written approval to the making or allowance of the said revaluation requested in the said pending application of the undersigned taxpayer if, notwithstanding such approval and a revaluation consequent thereto, the said taxpayer would continue to demand or claim any further or other revaluation in the future or on past returns such as the now pending 1918 claim for refund on the same or similar grounds." The foregoing recital to the effect that the Commissioner was unwilling to approve the revaluation requested by the Freeport Texas Company "if, notwithstanding such approval and a revaluation consequent thereto, the said taxpayer would continue to demand or claim any further or other revaluation in the future or on past returns such as the now pending 1918 claim for refund on the same or similar grounds," was inserted in the agreement by Madison, who says he inserted it to tie the plaintiff to the old valuation for the 1918 taxes. It is difficult to give the words "pending 1918 claim" any other effect and almost impossible to suppose that the Commissioner meant to reopen the old valuation for March 1, 1913, in respect to 1918 taxes and practically to confess judgment upon a cause of action for $347,436.36 in any such indirect and extraordinary way. Moreover, in an action at law the complaint cannot properly be amended so as to embrace a cause of action that has arisen since the suit was be-

gun. If, on the other hand, the amended complaint should be treated as instituting a new action, it would have to fail because no claim for overassessment of additional taxes for 1918 income, based on an undervaluation of sulphur reserves, was ever presented to or rejected by the Commissioner, as required by statute. If the making of the agreement were to be regarded as the presentation of a new claim it came too late, for it was entered into more than five years after the payment of the tax. 26 U. S. C. § 1065 (26 USCA § 1065).

Judgment affirmed.