**PIEDMONT MFG. CO. v. UNITED STATES.**

No. 1427.

District Court, W. D. South Carolina, Greenville Division.

July 27, 1935.

Miller & Lowrey, of Macon, Ga., and Morgan & Cothran, of Greenville, S.C., for plaintiff.

C. C. Wyche, U. S. Atty., of Spartanburg, S. C., O. H. Doyle and E. P. Riley, Asst. U. S. Attys., both of Greenville, S. C., Robert H. Jackson, Asst. Atty. Gen., and E. E. Angevine, Tax Division, Department of Justice, of Washington, D. C.

GLENN, District Judge.

This is a suit in two counts, brought under section 24, subdivision (20), of the Judicial Code, 28 U.S.C., § 41, subparagraph (20), 28 U.S.C.A. § 41(20), for the recovery of income and excess profits taxes, alleged to have been erroneously and illegally assessed and collected for the taxable years ending March 31, 1917, March 31, 1918, and March 31, 1920. The first count is based on claims for refund, alleged to have been timely filed and properly and timely amended, claiming erroneous and illegal assessment and collection of income and excess profits taxes of $5,824.03 for 1917, $43,977.86 for 1918, and $24,015.17 for 1920, which were rejected by the Commissioner of Internal Revenue. The second count is based on section 284 (c) of the Revenue Act of 1926, 44 Stat. 66, and proceeds on the theory that, whether proper claims for refund were filed within four years of the date of payment of the tax, the Commissioner decreased plaintiff's invested capital, subsequent to the years in question, due to the fact that the plaintiff failed to take adequate deductions in previous years, with the result that there was an overpayment of income and profits taxes for the years 1917, 1918, and 1920, refundable without such claims being filed to the amounts of $5,-824.03 for 1917, $43,330.98 for 1918, and $10,796.75 for 1920.

A hearing was had in this case pursuant to the following stipulation:

"It is hereby stipulated and agreed by and between the parties hereto, by their

582

respective attorneys, that only questions of law presented by the agreed statement of facts in this case, and such other evidence as may be offered by either party not inconsistent with the facts stipulated to be taken as true, shall be submitted to the court for determination on appropriate motion by counsel for either party.

"And that in the event the court should sustain the contentions of the plaintiff, the case shall be referred to the Bureau of Internal Revenue for investigation on its merits. This reference shall be made without prejudice to the rights of either party, and the above stated case shall remain pending in this court for further appropriate proceedings."

The procedure as stipulated and reference of the case to the Bureau for investigation on the merits without prejudice to the rights of either party has the approval of the court. The stipulation was referred to during the hearing, and was recognized by counsel for both the taxpayer and the government as binding upon them.

At the hearing the parties filed an agreed statement of facts relative to the question of filing timely claims for refund and the limitations for bringing this suit; also the taxpayer's representative before the Bureau of Internal Revenue on its claims there testified at the hearing to facts relative to the same question. At the conclusion of the evidence, defendant moved the dismissal of plaintiff's complaint on the ground that the claims for refund to which the suit purports to relate were at the time of filing barred therefrom by the applicable statute of limitations, and further that this court is without jurisdiction to entertain this suit in so far as it relates to the recovery of the amounts of $13,734.79 and $75,679.98 paid by credit on July 21, 1924, for the fiscal years ended March 31, 1918, and March 31, 1920.

The case is now before the court on plaintiff's petition as amended, defendant's answer to the petition and its amended answer, the agreed statement of facts, the testimony of plaintiff's representative, and the motion to dismiss, to determine only the questions of law raised by that motion.

### Findings of Facts.

The facts as I find them are as follows:

1. The Commissioner reviewed plaintiff's tax returns for the fiscal years ending March 31, 1916, to March 31, 1921, inclusive, and in May, 1924, made additional assessments of $5,484 for 1917, $66,152.24 for 1918, and $75,679.98 for 1920, and allowed overassessments of $78,758.43 for 1919, and $10,656.34 for 1921.

2. On July 11, 1924, plaintiff paid directly to the collector $5,484 for 1917 additional assessment, and $52,417.45 on the 1918 additional assessment. The balance of the 1918 additional assessment amounting to $13,734.79, and the 1920 additional assessment, in the sum of $75,679.98, were paid July 21, 1924, by the collector applying the overassessments for 1919 and 1921, on the additional assessment for 1918 and 1920.

3. The collectors of internal revenue to whom the taxes sought to be recovered in this suit were paid were at the time this suit was begun either dead or out of office; this includes the collector who collected the amounts originally paid on years 1919 and 1921, and applied by credit in payment of assessments for 1918 and 1920.

4. On June 29, 1928, plaintiff filed three claims for refund; one, for the fiscal year 1917, in the amount of $5,484; one for the fiscal year 1918, in the amount of $66,-152.24; one for the fiscal year 1920, in the amount of $75,675.98. The claim for refund for 1917 sought a refund, together with other grounds, on a request for special assessment under the provisions of sections 209 and 210 of the Revenue Act of 1917, 40 Stat. 306, 307, and expressly asserted the inability of the Commissioner to determine plaintiff's correct invested capital, and in support of this gave a statement of facts in reference to the history of the taxpayer; its corporate structure; its method of bookkeeping; its practice of charging all renewals, replacements, and additions and betterments to the profit and loss account instead of to capital account and carrying its fixed assets on its books at a figure equal to its capital stock, without regard to the actual value of such assets. Likewise the claims for refund for 1918 and 1920 were based on a request for special assessment under provisions of sections 209 and 210 of the 1917 law, and sections 327 and 328 of the 1918 law, 40 Stat. 1093, and substantially the same statement of facts is set out in each of these claims as is contained in the 1917 claim, in support of plaintiff's contention that the Commissioner was unable to correctly determine its invested capital.

5. On October 15, 1928, the Commissioner advised plaintiff that its claim for refund for the year ended March 31, 1920, had been examined, and would be rejected in full unless within 30 days from the date of the Commissioner's letter plaintiff advised the Bureau it desired a hearing or filed a protest.

6. In response to the Commissioner's letter of October 15, 1928, plaintiff, on November 8th, wrote the Commissioner that it desired a hearing in view of the fact that it had recently obtained some very important and substantial evidence relative to its refund claims, and desired the opportunity to present the same in a conference on or around November 20th to 22d.

7. Plaintiff's request was granted, and on November 21, 1928, a conference was held in the special assessment section of the Bureau between plaintiff's representative and representatives of the Commissioner of Internal Revenue. At this conference on November 21, 1928, plaintiff filed, in triplicate, an amendment to its claim for refund for the respective years 1917, 1918, and 1920, which was designated "Appeal for Refund, Fiscal Years 1917, 1918 and 1920."

8. In this appeal for refund, plaintiff stated to the Bureau that plaintiff had made a complete and thorough audit of its income tax liability for the years 1917, 1918, and 1920, with a view of correctly ascertaining its invested capital, which the Bureau had theretofore claimed could be correctly computed, and that this audit disclosed certain errors made by the Commissioner in the computation of the taxable income and invested capital for said three years.

9. In this appeal the taxpayer advised the Commissioner: "This appeal, therefore, supplements the original appeal filed in conjunction with the refund claims heretofore presented. The following exhibits and their supporting schedules set forth the details and explanations of the taxpayer corporation's claims and contentions."

10. The exhibits and schedules included in this appeal for refund disclosed the specific errors therein alleged and the refunds claimed due as a result of the correction of these errors. The amounts of the refunds therein claimed are: $5,824.03 for 1917, $43,977.86 for 1918, and $24,015.17 for 1920.

11. This appeal for refund closed in these words: "The above exhibits and their supporting schedules set forth numerous errors of omission and commission in the computation of taxpayer corporations income and invested capital; and unless these errors are corrected, it is plainly evident that the taxpayer corporation would be entitled to the benefit of the relief sections of the '17 and '18 Acts, which benefits have been denied the taxpayer corporation heretofore."

12. At the conference of November 21, 1928, plaintiff's representative advised the Commissioner's representatives that plaintiff had claims filed under section 209 and 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918, and claimed that the Commissioner could not correctly compute plaintiff's invested capital. The appeal for refund incorporating amendatory claims for all three years in controversy was accepted by the Commissioner's representative at this conference, and they then advised plaintiff's representatives that the amended claims set forth in the appeal for refund would have to be referred to the field for investigation, verification, and report, and, accordingly, it was so referred to the field agent.

13. Pursuant to this reference, the field representative of the Field Division of the Bureau came to plaintiff's mill at Piedmont, S. C., bringing with him a copy of the amendatory claims filed November 21, 1928, notified plaintiff and its representative, L. C. Dodge, that he had come to make an audit of the taxpayer's books, and that Mr. Dodge could be of assistance if he would come to Piedmont and go over the appeal for refund with him. Mr. Dodge went over the appeal for refund with the field representative, and they reviewed and discussed all the errors set forth in the appeal for refund. The field agent made an audit, spending from ten days to two weeks in this work. He checked the facts and figures set forth in the amended claims, and found as a result of this audit sufficient errors, disclosed by said claims, to show an overassessment of approximately $70,000 for the three fiscal years 1917, 1918, and 1920. He also examined other years, and at the conclusion of his investigation he drafted a closing agreement allowing the taxpayer a refund in the amount of the overassessment determined by him for all years, which was approximately $98,000. Of this

584

amount approximately $70,000 was allocated to the three fiscal years 1917, 1918, and 1920.

14. Some 30 days later, the revenue agent in charge at Columbia, S. C., asked plaintiff's representative to a conference relative to the claims for the three years, and there raised for the first time the objection that the claims for refund asserted in the appeal for refund were not amendatory of the claims filed June 29, 1928, based on a request for special assessment under section 210, of the Revenue Act of 1917, and section 327, Revenue Act 1918, and were barred by the statute of limitations.

15. On October 8, 1929, the Commissioner wrote plaintiff that its claim for refund for the fiscal years 1917, 1918, and 1920 would be rejected, for the reason the claims covering these years were filed after the expiration of the statutory period of limitations, but gave plaintiff an opportunity to be heard further. On November 5, 1929, plaintiff protested further the proposed action of the Commissioner rejecting the claims as barred, and argued more fully its contention that the claims for refund incorporated in its appeal for refund filed November 21, 1928, were amendatory of the claims filed June 28, 1928, and were therefore timely. In this protest plaintiff also made claim for refund under section 284 (c) of the Revenue Act of 1926, setting out that the invested capital of plaintiff had been decreased by the Commissioner, and that such decrease was due to the fact that plaintiff had failed to take adequate deductions in previous years, with the result that there had been an overpayment of its taxes, giving facts and figures in support of this amendatory ground for refund.

16. The Commissioner gave further consideration to the amended claim for refund and to plaintiff's protest of November 5, 1929, and on October 25, 1930, he wrote plaintiff that he was of the opinion that the refund for the years 1917, 1918, and 1920 cannot be made on account of the grounds set forth in the new claims, for the reason that these grounds were raised for the first time after the expiration of the statutory period of limitations governing the filing of refund claims, and further that section 284 (c) of the Revenue Act of 1926 was not applicable.

17. On October 31, 1930, the Commissioner advised plaintiff that its amended claims for refund for the fiscal years ending March 31, 1917, March 31, 1918, and March 31, 1920, for the respective amounts of $5,824.03, $43,977.86, and $24,015.17, were disallowed by the Commissioner on the schedule dated October 31, 1930.

18. The Commissioner adopted and acted upon the report of the examining field agent, made as a result of his audit at the time he came to Piedmont to check and verify the amendatory appeal for refund, filed November 21, 1928. The changes and corrections shown by this field agent's report were used in computing plaintiff's tax liability for years subsequent to March 31, 1920, although the Commissioner refused to allow refunds for the fiscal years 1917, 1918, and 1920, as shown by the report of the field agent.

19. At the time the amendatory claims for refund incorporated in the appeal for refund were filed, the original claims for the fiscal years 1917 and 1920 had not been rejected, but the original claim for the fiscal year 1918 had been rejected on schedule of October 5, 1928. This, however, was not a final rejection, as the Commissioner reconsidered the claim for 1918 as amended. The claims for refund for the 3 fiscal years in question as amended by the grounds set forth in the appeal for refund were finally rejected on October 31, 1930.

20. This suit was begun August 12, 1931.

21. The grounds for refund asserted in the first count of the petition are the same as the grounds for refund shown in the amendatory claims for refund filed November 21, 1928.

22. The second count is based on section 284 (c) of the Revenue Act of 1926, which was invoked in plaintiff's protest filed November 5, 1929.

### Conclusions of Law.

The questions of law presented by defendant's motion to dismiss are:

1. Has this court jurisdiction of the suit in so far as it seeks a recovery of taxes paid by credit of overassessments allowed on other years?

2. Was the commissioner prohibited by section 608 of the Revenue Act of 1928, 26 U.S.C. 2608 (now 26 U.S.C.A. § 1674, and note), from reconsidering a claim for refund once rejected, as to make the first rejection final?

3. Were the grounds of refund asserted in the claims for refund incorporated in the appeal for refund filed November 21, 1928, properly amendatory of the claims filed June 29, 1928, and therefore in time?

4. Must a claim invoking section 284 (c) of the Revenue Act of 1926 be filed within 4 years of payment of the tax, as a condition precedent to filing suit for recovery of taxes alleged as overpayments allowable under that section?

■ 5. The question of the court's jurisdiction is applicable only to so much of the suit as seeks a recovery for 1920, as the cash payment made on the additional assessment for 1918 is more than the refund sought. The government contends that, when the amount sued for is more than $10,000, this court has jurisdiction only in event the collector while in office collected the tax directly from the taxpayer and at the time of suit is dead or out of office. It is my opinion that this contention is without merit and that this court has jurisdiction of the entire suit under 28 U.S.C. § 41 (20) (28 U.S.C.A. § 41 (20). In the collection of the tax, whether by cash, check, or credit, the collector performs merely a ministerial duty, he acts under the direction of his superiors, a recovery against him in event of an overassessment is equivalent to a recovery against the United States; the judgment is paid from the Treasury of the United States. When he collects by credit, he collects the tax as effectively as if he had delivered to the taxpayers the government's check and the taxpayer gave him back the money or a check for the same amount. The tax collector need not be guilty of any actionable wrong aside from his ministerial acts, for which he is personally liable to the taxpayer before a taxpayer may maintain a suit against him. Furthermore, 28 U.S.C. § 41 (20), 28 U.S.C.A. § 41 (20), does not require the collector who collected the tax to be personally liable to suit before suit can be brought against the United States in a district court of the United States, but merely that he collect the tax and is dead or out of office at the time of suit. The method of collection is not specified or limited, and I conclude that a collection by credit is sufficient to satisfy the statute. Furthermore, the collector who collected the money in the first instance that ultimately went in payment of the 1920 assessment was at the time of suit dead or out of office.

■ 6. It is my opinion that section 608 of the Revenue Act of 1928 (26 U.S.C.A. § 1674 and note) has no application at all to this case. It does not purport to be a statute of limitations governing the bringing of suits, but is simply a barrier placed upon administrative refunds by the Bureau of Internal Revenue independent of suits. It does not prevent the Commissioner from reconsidering a rejected claim for refund within the time allowed for bringing suit nor destroy or nullify the effect of such a reconsideration as to make the first rejection final for the purpose of suit. I conclude that the action of the Commissioner was a reconsideration of the claims as amended and that there was not a final rejection until October 31, 1930, and that this suit was brought within 2 years of the final rejection of the claims upon which it is based.

■ 7. The real question in this case, so far as the first count of the suit is concerned, is whether the grounds of refund set up in appeal for refund filed November 21, 1928, are properly amendatory of the claims filed June 29, 1928, which admittedly were in time. The original claims were based on a request for special assessment under sections 209 and 210 of the Revenue Act of 1917, and sections 327 and 328 of the Revenue Act of 1918. These claims were sufficient to invoke section 327 (a) as well as 327 (d) of the Revenue Act of 1918, and a determination by the Commissioner as to whether he was able to correctly determine taxpayer's invested capital for the years in dispute. The case as to the sufficiency and propriety of the amendments is governed by the decision of the Supreme Court of the United States in the case of Bemis Brothers Bag Company v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011. I conclude that under that decision the grounds for refund set up in the appeal for refund filed November 21, 1928, were properly amendatory of the original claims filed June 29, 1928, and therefore not barred by the statute of limitations at the time filed, and that the first count of the suit based upon the grounds set forth in the appeal for refund was timely.

■ 8. As to the second count, the motion to dismiss raises the question as to whether a claim for refund invoking section 284 (c) of the Revenue Act of 1926 must be filed within 4 years of payment, as a condition precedent to suit for a re-

fund claimed allowable under that section. To so hold would nullify the statute and render it useless. The apparent purpose is· to relieve against the necessity of filing claims for refund when the Commissioner in subsequent years changes the corporate taxpayer's invested capital because of its failure to take proper deductions in prior years, which deductions, if properly made, would result in an overpayment of the tax in such prior years, which payments may have been made many years before. ·It is my opinion that no such claim is necessary as a condition precedent to suit based on 284 (c) of the Revenue Act of 1926.

### Order.

It is therefore considered, ordered, and adjudged that ° the defendant's motion to dismiss plaintiff's complaint be, and the same is hereby, overruled and denied.