## STUTZ MOTOR CAR CO. OF AMERICA v. UNITED STATES.

No. 5519.

Circuit Court of Appeals, Seventh Circuit.

Dec. 14, 1935.

624

John E. Hughes, of Chicago, Ill., for appellant.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Milford S. Zimmerman, and Wm. B. Waldo, Sp. Assts. to. Atty. Gen., and Val Nolan, U. S. Atty., of Indianapolis, Ind., for the United States.

Before SPARKS and ALSCHULER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal involves a refund of income and excess profits taxes for 1917. The District Court rendered judgment for the Government and from that judgment the appeal is prosecuted.

The facts found are substantially as follows: On June 8, 1916, Henry F. Campbell and Harry C. Stutz (who owned seventy-eight per cent of the capital stock of the Stutz Motor Car Company of Indiana) entered into two contracts with Allan A. Ryan (a member of Allan A. Ryan and Company of New York). By the terms of those contracts appellant was to be organized with 75,000 shares of no par value capital stock, which was to be purchased by Ryan and Company for $1,125,000. Appellant, in turn, was to purchase the entire outstanding capital stock, consisting of 1000 shares, of the Stutz Motor Car Company of Indiana for $1,125,000. Ryan, in turn, was to transfer to Stutz and Campbell, without cost to them, 37,500 shares of the capital stock of appellant, and he was to dispose of 27,500 of those shares for Stutz and Campbell, through sales upon the New York Stock Exchange at a minimum price of thirty dollars per share. Whatever he received above that figure was to be divided equally between the vendors and Ryan, and Ryan was to receive certain compensation for services and expenses. Those contracts were performed (with the exception that Ryan never received any compensation for his services or expenses).

Appellant was incorporated, and on June 22, 1916, Ryan and Company submitted an offer to it to purchase its outstanding capital stock for $1,125,000 in cash. The offer was accepted on the same day by appellant's incorporators and directors, among whom were Stutz, Campbell and Ryan. On the same day, Stutz and Campbell offered to sell the entire capital stock of the Stutz Motor Car Company of Indiana for $1,125,000 in cash, and the offer was accepted and consummated by appellant's incorporators and directors.

Appellant continued to own the stock of the Indiana corporation until June 20, 1917, when all of the assets of the latter company were transferred to appellant, which in turn surrendered the stock of the Indiana corporation, and the latter corporation was dissolved in September, 1917.

Appellant paid $460,885.01 as income and profits taxes for the calendar year 1917, paying $380,206.93 on June 28, 1918, and $80,678.08 on October 30, 1919. On August 1, 1919, the Commissioner advised appellant that its invested capital stock for the year 1917 had been determined to be $1,975,976.78. On February 9, 1924, appellant filed a claim for refund, having previously filed two appeals on the respective dates of March 6, 1923, and May 7, 1923. Appellant's claim for a refund was rejected on June 7, 1926, and on December 9, 1926, it petitioned the Commissioner to re-open its claim for refund. It is not disclosed whether that petition was acted upon prior to the institution of this action, but after its institution appellant filed ad-

ditional requests for reopening of the claim which were refused after conferences with appellant's representatives.

On June 2, 1928, within two years after the Commissioner's rejection of the refund claim, appellant filed its original bill of complaint in this action. The time for filing such bill expired on June 6, 1928. Revenue Act of 1926, § 1113 (a), 44 Stat. 116, 26 U.S.C.A. § 156 (see 26 U.S.C.A. §§ 1672–1673). Appellant filed its amended bill on September 20, 1928, and its second amended bill on December 4, 1934.

We are first confronted with appellee's contention that the suit in its present form was not timely brought. In support of this contention appellee urges that the original bill was based solely on the ground that appellant was entitled to special assessment under section 210 of the Revenue Act of 1917 (40 Stat. 307), and that both amended bills sought to recover on the theory that appellant had not been allowed sufficient invested capital. It is argued, under the ruling in Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985, which was decided on June 4, 1928, that the original complaint did not assert a justiciable controversy, because, as held in that case, the decision of the Commissioner in refusing a special assessment is final and can not be reviewed in the District Courts. Appellee urges that each amended bill asserted a justiciable controversy wholly unrelated to the theory relied upon in the original bill, and must be considered as a new cause of action filed after the period of limitation for filing such actions had expired.

It is clear to us that the original bill was not based solely on the ground that appellant was entitled to a special assessment. It alleged specifically that at the time of the acquisition of appellant's assets, its invested capital amounted to not less than $3,500,000, and that the Commissioner had erroneously based the assessment on a valuation of $1,699,367, and that by reason of those facts, appellant had overpaid its tax in the sum of not less than $200,000, for which it asked a refund. The controversy throughout all these proceedings has been the alleged fact that the Commissioner valued the capital investment too low, and no complaint was made by appellee of the dearth of specifications until more than two years had elapsed from the rejection of the refund.

It is true the original bill alleged that the Secretary of the Treasury was unable to determine accurately the amount of invested capital, and for that reason appellant requested a special assessment under section 210, supra, but the alleged facts of the original bill, if true, were sufficient to warrant the Commissioner in determining the correct amount of the invested capital if it could be accurately determined, or to adjust the assessment under section 210, if it could not otherwise be accurately determined. The Government at all the times referred to had possession of all the facts, and it certainly was not surprised by the allegations of any of the amendments.

At the time the original bill was filed, it was thought that a decision of the Supreme Court was close at hand in the Williamsport Case. That surmise proved to be well grounded, for it followed within two days. Thereupon, in accord with that opinion, appellant without objection filed its amended bill on September 20, in which it abandoned its request for a computation of its tax under section 210, and persisted in its demand for a refund because of the Commissioner's erroneous valuation of the capital investment. If, as appellee contends, the original complaint was based solely on a request for special assessment, the first amended bill should have been objected to, and it should not have been permitted to be filed, because in that event the original bill did not present a justiciable controversy and it could not be amended to state a new cause of action. But neither appellee nor the court objected to the filing of the first amended bill, and likewise on December 4, 1934, the second amended bill was filed without objection. It was met by a motion to dismiss and later by an answer, both being based on the alleged fact of departure in theory, and the expiration of the statute of limitations. The motion to dismiss was overruled and the cause went to trial. We think the court's ruling in this respect was right. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L. Ed. 633; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011.

Appellee relies upon United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626, as hold-

ing contrary to this view. It is true that in that case the court held that a claim for special assessment could not be turned by amendment into one for the revision of the assessment by increasing the value of the real estate included in invested capital, and that a claim on that ground, coming after the time limited by statute for filing claims, was barred. That decision, however, must be read in the light of the facts there presented. The taxpayer had filed its .claim for refund based on an alleged erroneous denial of a special assessment. The Commissioner thereupon acknowledged the filing by letter in which he advised the taxpayer: "No consideration may be given under the provisions of Sections 327 and 328 until statutory net income and invested capital are definitely determined. It is therefore necessary that you acquiesce in the net income and invested capital as shown in the revenue agent's report of March 25, 1920, for the year 1918, or submit exceptions, if any, which you may take thereto. If exceptions are taken they should be presented in the form of appeal prepared in accordance with the provisions of Treasury Decision 3492, a copy of which is enclosed." The taxpayer took no appeal and it filed no exceptions complaining of the assessment of capital or income. It obviously chose to acquiesce in the report that the cash value of the capital had been fairly ascertained, and to take its stand on the position that under sections 327 and 328 its tax should be determined without reference to such value and in accordance with other methods both exceptional and discretionary. The Commissioner thereupon proceeded to a consideration of the claim that error had been committed in failing to give the taxpayer the benefit of a special method of assessment, and that claim was rejected. The Supreme Court thereupon held that the taxpayer by its claim as originally presented had abandoned the position that there had been any error of fact or law in the assessment of the tax according to the normal method, and had planted itself on the position that the special method would be fairer. Under those circumstances, the court held that the ground thus deserted could not be recovered by amendment. It is obvious that those facts are not comparable to those here presented.

█ We think the second amended bill asserted no controversy which was not included in the original bill or in the first amendment. It is true that the allegations of the original bill are quite general in their character, and it may be admitted that they do not comply with the rules and regulations of the Department as to particularization. However, that is a matter which may be waived by the Department and in this case we think they did waive it. All the facts now presented were set forth in documents filed with the Commissioner prior to the expiration of the statute of limitations, and the most that can be said is that the theory of the law upon which appellant now relies was not set out in the original complaint. If that be true, it would seem to furnish no basis for appellee's contention. Wunderle v. Mc-Caughn (D.C.), 38 F.(2d) 258. It may also be conceded that after the rejection of a refund a taxpayer may not amend his request by adding new facts. That is a reasonable provision, because error of the Commissioner can not be predicated upon facts which were not before him. But in this case the Commissioner was in possession of all the facts, and had considered them with full knowledge on his part that appellant was controverting his valuation of the invested capital. Under these facts, we think the reason for the rule was lacking, and it is not applicable.

The remaining contested issue is whether the invested capital of appellant for the year 1917 was greater than that allowed by the Commissioner.

█ It can not be controverted that capital stock, when paid in for stock or shares in a corporation or partnership, will be regarded as tangible property. Commissioner's Regulations 41, Article 47, issued under the Act of 1917; United Cigar Stores v. United States, 62 Ct.Cl. 134; Appeal of Regal Shoe Co., 1 B.T.A. 896; Appeal of Sentinel Publishing Co., 8 B.T.A. 325; Arizona Commercial Mining Co. v. Casey (D.C.), 32 F.(2d) 288. Basing its argument on this premise, appellant contends that it was entitled to include in its invested capital the stock of the Indiana corporation at its fair market value at the time of its acquisition by appellant, which it claims was $2,768,550. It bases this calculation upon what the stockholders of the Indiana corporation actually received as a result of the transactions. That is to say, they received in cash from appellant $1,125,000. They also received from Ryan 37,500 shares of appellant's capital stock. Within ninety days thereafter they sold 27,500 of those shares for a fair market

value of $43.828 a share, which amounted to $1,205,270. They retained ten thousand shares which they subsequently sold on the market within a year at approximately $70 a share. However, in calculating appellant's invested capital at the time of its acquisition of the Indiana company's shares, the ten thousand remaining shares were valued at $43.828 a share, which amounted to $438,280.

It is contended, however, by appellee that appellant's sale of its own stock, and its purchase of the Indiana company's entire stock were purely cash transactions for the respective considerations of $1,125,000, and that appellant's capital investment must be placed at that amount. Ordinarily, that conclusion would be sound, especially where the thing purchased had no market value in the strict or proper sense. Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496; McCandless v. Furlaud, 56 S.Ct. 41, 80 L.Ed. —, decided by the Supreme Court November 11, 1935. But we are here confronted with a situation in which the values were approximately known and in effect agreed upon. That is to say, all parties knew that the stock of the Indiana company was worth more than twice as much as the cash which was paid for it. The complexity of the facts, we think, necessarily warrants a joint consideration of all the agreements entered into by all the parties interested, in order to arrive at a fair and equitable understanding of what was intended to be, and what was actually, accomplished by the entire transaction. We feel more certain of this conclusion by reason of the fact that former Commissioners have in effect approved it, and by the further fact that the 1918 tax and those subsequently assessed were calculated on the assumption that the conclusion was sound.

Stutz, Campbell and Ryan were the moving and controlling factors in the entire transaction. Their sole object was the organization of appellant for the purpose of purchasing and taking over the Indiana corporation, and they were in accord as to the value of the latter. It is quite obvious that they sought to accomplish their object with a minimum amount of cash. They accordingly organized appellant with capital stock which had no par value. Indeed, it was of no value except that which was gained by carrying out the contracts. It is true that Ryan proposed to, and did, buy it for $1,125,000, and

appellant by resolution declared that that was a fair price. Under the circumstances, it was a fair price, because the company knew it could purchase the stock of the Indiana company for the same amount, providing Ryan would deliver to Stutz and Campbell 37,500 shares of the appellant corporation as he had agreed to. All the parties knew, and it is not here denied, that the stock of the Indiana corporation was reasonably worth what was received for it from appellant and Ryan. What appellant received from Ryan for its stock was not a matter of importance to it, providing it could secure the Indiana corporation stock for the same amount; and likewise it was not a matter of importance what the stockholders of the Indiana corporation received for their stock from appellant, providing they also received from Ryan a sufficient amount of appellant's capital stock, which with the cash received from appellant would constitute the real value of the Indiana corporation stock. It was also a matter of no importance to Ryan that he paid $1,125,000 for the entire issue of appellant's stock, and immediately delivered half of it to Stutz and Campbell, because under the contemporaneous contracts the Indiana company would thereby be bound to deliver its entire stock issue to appellant, which would abundantly sustain his investment. We do not overlook the fact that with respect to the two corporations we are dealing with two separate entities, but the most important thing for our consideration is to arrive at a fair and equitable basis from which to determine the amount of tax that is actually due, within the meaning of the applicable statutes. To accomplish this, we can not be restricted by mere form, but will look to the substance of the entire transaction.

Section 207 (a) of the Revenue Act of 1917 (40 Stat. 306) provides, with reference to corporations, that invested capital means (1) actual cash paid in, (2) actual cash value of tangible property paid in other than cash for stock or shares in such corporation at the time of such payment, and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year. Under that Act the Commissioner promulgated Article 63 of Regulations 41 which provided that where it could be shown by evidence satisfactory to the Commissioner that tangible property had been conveyed to a corporation by gift, or at a value ac-

curately ascertainable or definitely known as of the date of conveyance, clearly and substantially in excess of the cash or the par value of the stock or shares paid therefor, then the amount of the excess should be considered as paid-in surplus. In 1918 and 1921 Congress re-enacted the same provisions under which that regulation was promulgated, and thereby approved the regulation. Massachusetts Mutual Life Insurance Co. v. United States, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739.

Appellee relies upon La Belle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 530, 65 L.Ed. 998, as stating a doctrine inconsistent with the regulation just mentioned. We observe no inconsistency. There the claim was for invested capital based upon subsequent appreciation and not upon the value of the property at the time of its acquisition. It was not claimed that at the time the lands involved were purchased they were known to be worth more than was paid for them, nor was it claimed they were bought from stockholders. It is worthy of note that the Court there said, "The provision of clause (3) that includes 'paid in or earned surplus and undivided profits used or employed in the business' recognizes that in some cases contributions are received from stockholders in money or its equivalent for the specific purpose of creating an actual excess capital over and above the par value of the stock; and, in view of the context, surplus 'earned' as well as that 'paid in,' excludes the idea of capitalizing (for the purposes of this tax) a mere appreciation of values over cost."

The regulation was followed and applied in Arizona Commercial Mining Co. v. Casey, supra; Southern Pacific Co. v. Edwards (D.C.), 57 F.(2d) 891; and in Appeal of Steinbach Co., 3 B.T.A. 348. In the last case the Board said: "It is clear that there is ample legal basis for the taxpayer's contention that the value of the property paid in in excess of the consideration paid therefor should be deemed to be paid-in surplus. On this point the law, the authority of decided cases, the administrative regulations of the Commissioner, and the best accounting practice are clear and harmonious." Our research confirms the Board's conclusion. The cases relied upon by appellee in support of a different doctrine involved facts wherein the bargain purchases sought to be capitalized at more than cost were made from strangers and not stockholders. This fact we think is quite sufficient to distinguish them from the case at bar.

We are convinced, therefore, that appellant under the regulation referred to, was entitled to include the stock of the Indiana company in its invested capital at its value at the date of its acquisition, and it does not appear to us that that conclusion is inconsistent with the facts found by the District Court. Those findings do not disclose what the stock was worth at the time of acquisition, but they certainly do not deny that the value of the assets supporting the stock was $2,768,550, for it was found that the tangible assets were of the value of $518,647.73, and that the intangible assets did not exceed the value of $2,249,902.27. It is also worthy of note that Commissioner Roper (1917-1920) in computing appellant's invested capital found that the stock of the Indiana company when acquired by appellant was of the value of $2,768,550, and that finding was never reversed nor modified during his term of office. That valuation was also used by the Commissioner in computing Stutz and Campbell's profit in assessing their individual income tax, and that tax was paid by them. It is argued by appellee, however, that the finding of Commissioner Roper was erroneously made through a misapprehension of the facts, with respect to the number of shares purchased by Ryan. A perusal of the record convinces us that there was no misapprehension of facts in the findings of that Commissioner. The record further discloses that the succeeding Commissioner did not change, but ultimately adopted, Commissioner Roper's valuation, and allowed and paid appellant refunds for 1918 and 1919 based on the value claimed in this suit. He, however, rejected the claim for 1917 for the sole reason that the refund claim for that year was insufficient.

From the above considerations we are convinced that the fair market value of the Indiana corporation stock at the time it was acquired by appellant was $2,768,550, and it should have been included in appellant's invested capital at that valuation.

While appellee contends that appellant's invested capital should be held to consist only of the actual cash paid, $1,125,000, plus the earned surplus as of December 31, 1916, amounting to $120,452.18, or a total of $1,245,452.18, which is less than the Commissioner allowed, yet it urges in the alternative that if it be considered that

the appellant acquired all the stock of the Indiana corporation in return for its own stock, an affiliation resulted, and under Article 868 of Regulations 45, and Article 58 of Regulations 41, the invested capital would be less than the Commissioner allowed. In support of that contention, it relies upon Autosales Corporation v. Commissioner (C.C.A.), 43 F.(2d) 931. That case holds that before the regulations last referred to can be applied, the existence of two facts must be found, (1) the stock of the subsidiary company must have been acquired with the stock of the parent company, and (2) there must have been an affiliation. In the absence of either, the regulation is not applicable. The record here does not disclose that appellant acquired all the stock of the Indiana company for its own stock, nor did the District Court so find.

The District Court concluded (1) that the law was with the appellee, (2) that appellant's invested capital for 1917 did not exceed the amount allowed by the Commissioner, and (3) that appellee should recover its costs. Since the court passed upon the merits of the claim, we assume that it was of the opinion that the second amended claim was timely filed, and in this we think the court was right. We think, however, that the second and third conclusions of law are not supported by the findings.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.